UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| KIMBERLEY HICKS,<br><br>  Plaintiff,<br><br>v.<br><br>ADRIZA CAESAR, in her individual capacity, and BRIAN BROWN, in his individual capacity,<br><br>  Defendants. | Case No. 19-12716<br><br>Honorable Laurie J. Michelson |

**OPINION AND ORDER GRANTING IN PART DEFENDANT CAESAR'S MOTION FOR SUMMARY JUDGMENT [27]**

In the summer of 2016, Kimberly Hicks, an African American woman, began working as a general office assistant at Michigan Rehabilitation Services (MRS), which was then part of the Michigan Department of Health and Human Services (MDHHS). Beginning in January 2017, Adriza Caesar, also an African American woman, supervised Hicks.

Unfortunately, Hicks says she almost immediately suffered "toxicity and hostile behavior from her coworkers and supervisors" at MRS. In particular, Hicks had several altercations with other office assistants and rehabilitation counselors, one of which required intervention from the police. In all, Hicks was issued three formal "counselings" and four written reprimands between June 2017 and April 2019. According to Hicks, this discipline was the result of a campaign of harassment

orchestrated by Caesar. According to Caesar, the counselings and reprimands were the result of Hicks' repeated, inappropriate workplace behavior.

Hicks also alleges that she was the victim of harassment by Defendant Brian Brown, a male rehabilitation counselor at MRS that she socialized with outside of work. She claims that Brown "sent her inappropriate text messages . . . [and] look[ed] down her blouse."

Based on these and other incidents, Hicks filed five discriminatory harassment complaints with state and federal agencies between June 2017 and May 2019. The complaints alleged weight, sex, and race discrimination, as well as disability discrimination, sexual harassment, and retaliation. The harassment complaints name various coworkers, including Caesar and Brown.

In the fall of 2019, having left MRS, Hicks filed this lawsuit. She alleges three violations of Michigan's Elliott-Larson Civil Rights Act, as well as a violation of 42 U.S.C. § 1983 for sex and race discrimination against both Brown and Caesar. After the close of discovery, Caesar—but not Brown—filed a motion for summary judgment.

Having carefully reviewed the record and having considered the parties' arguments, the Court will GRANT Caesar summary judgment on the federal claim for the reasons set out below. The Court declines to exercise supplemental jurisdiction over the state-law claims and DISMISSES those claims without prejudice.

## I. Background

As Caesar seeks summary judgment, the Court accepts as true Hicks' version of the events. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### A.

During the summer of 2016, Hicks, an African American woman, began working for the MRS Oakland District Office as a general office assistant. (ECF No. 31, PageID.664.) Prior to Hicks' transfer to MRS, she received generally positive performance evaluations from previous jobs with the State of Michigan, with the exception of one negative evaluation and subsequent performance improvement plan in 2013. (*Id.* at 664–665; ECF No. 27-3.)

In January 2017, Adriza Caesar, also an African American woman, was hired as the office site manager at MRS. (ECF No. 31, PageID.665.) She supervised both office assistants and rehabilitation counselors, including Hicks and Brown. (*Id.*; ECF No. 27-6, PageID.258–260.) In her affidavit, Caesar explained that she cannot unilaterally make major employment decisions: "[a]ctions such as hiring, firing or discipline can only be taken following consultation with and approval from the district manager, division director, human resources, and labor relations." (ECF No. 27-5, PageID.254.)

Hicks claims that Caesar began "severely harass[ing]" her following an altercation with another office assistant, Edwina Brock. (ECF No. 31, PageID.666.) On May 26, 2017, Hicks claims that Brock threatened her, swore at her, and called

her a "fat kangaroo bitch." (*Id.*) Hicks called the police in response. (*Id.*) Following an investigation, both women were issued formal counselings for unprofessional behavior and failure to work cooperatively. (ECF No. 27-11, PageID.295.)

On June 2, 2017, Hicks filed her first complaint with MDHHS against Brock for weight discrimination. (ECF No. 31, PageID.666.) EEOC officer Lance Bettison investigated the complaint and concluded that both women had behaved unprofessionally and that Brock's behavior did not rise to the level of discrimination. (ECF No. 27-11, PageID.296.)

In the following months, Hicks claims that Caesar harassed her because she made a complaint against Brock. (ECF No. 31, PageID.666.) In fact, on November 27, 2017, Hicks filed her second complaint, against both Brock and Caesar, with the Michigan Department of Civil Rights. (ECF No. 27-12, PageID.298.) The complaint realleged weight discrimination as to Brock and formally accused Caesar of retaliation. (*Id.*) Hicks alleged that Caesar violated MDHHS policy by refusing to grant her administrative leave or to provide references on job applications. (ECF No. 31, PageID.666.) Bettison (and the Michigan Department of Civil Rights) investigated the complaint and concluded that even if Hicks was called a derogatory name, "it would have been a one-time comment that did not rise to the level of harassment." (ECF No. 27-12, PageID.300.)

Over the following months, Hicks was disciplined several times for allegedly failing to cooperate with coworkers, including Caesar. (*See* ECF No. 27-13 (second formal counseling on October 9, 2017); ECF No. 27-16 (third formal counseling on

4

March 7, 2018); ECF No. 27-18 (first written reprimand on June 5, 2018); ECF No. 27-18 (second written reprimand on August 31, 2018).) Hicks disputes the facts underlying each disciplinary action as "false" or "fabricated," and she believes she was being unfairly targeted by Caesar. (ECF No. 31, PageID.668.)

The written reprimand Hicks received on August 31, 2018 forms the basis of Hicks' sex discrimination claim. (ECF No. 27-18, PageID.325.) That reprimand refers to two incidents: the first was a verbal argument with a coworker and the second involved Defendant Brown. (*Id.*) In June 2018, Brown complained to management that Hicks failed to give him a ride to an off-site work meeting. (*Id.*) After a brief investigation, MRS determined that, according to two witnesses, Hicks had agreed to give Brown a ride, but left without telling him. (*Id.*) Hicks, however, claimed that Brown never came to the car. (ECF No. 31-2, PageID.747.) Due to this incident and the verbal argument with a different coworker, Hicks was required to complete two online training courses. (*Id.*)

During MRS' investigation into the ride incident, Hicks filed a sexual-harassment complaint against Brown with MDHHS. (ECF Nos. 27-19, 31-13.) Hicks complained on July 18, 2018, a month after Brown's complaint, that Brown had "inappropriate[ly] look[ed] at my breast and body," that she had been "sexually propositioned" over text, and that Brown had looked down her dress "so closely that he asked about a scar on [her] left breast." (ECF No. 27-19, PageID.328.)

Bettison (from the EEOC) again investigated this complaint. (*Id.* at PageID.329.) He collected evidence and testimony from Hicks, Brown, and Caesar

5

and completed a discriminatory harassment investigation form. (*Id.* at PageID.329–332.) And on April 22, 2019, about nine months after Hicks' complaint, Bettison concluded that "the findings of this case do not support sexual harassment." (*Id.* at PageID.331.) Despite this outcome, Caesar reassigned Brown to a different assistant so he and Hicks would no longer work together directly. (ECF No. 31-2, PageID.766.)

Between Hicks' August 31, 2018 reprimand and her last day at MRS on July 12, 2019, she received two more written reprimands and filed two more discriminatory harassment complaints. (*See* ECF No. 27-20 (EEOC Charge of Discrimination on October 29, 2018); ECF No. 27-21 (third written reprimand on February 1, 2019); ECF No. 27-22 (fourth written reprimand on April 3, 2019); ECF No. 27-24 (MDHHS discriminatory harassment complaint on May 20, 2019).) Both of Hicks' complaints alleged that Caesar retaliated against her for reporting Brown's sexual harassment, among other things. (ECF No. 31, PageID.670–671.)

Hicks' final complaint of discriminatory harassment on May 20, 2019, includes her only allegation of racial discrimination. She claims that she was asked to put pants on or to go home and change "for wearing a dress that fell within the . . . dress code." (*Id.* at PageID.671.) Hicks also claims that one of her "Caucasian co-workers was wearing a dress much shorter than [hers] and she was not sent home or reprimanded." (*Id.*) Hicks claims that there is no explanation for this "other than the fact that [she] is African-American." (*Id.* at PageID.685.) However, Hicks admits that she did not go home or change her clothes, and instead told Caesar: "if that's a direct order put it in writing because I was not in any way in violation of the dress code."

6

(ECF No. 31-2, PageID.795.) There is no evidence that Hicks was formally disciplined for this incident. (*See* ECF No. 31, PageID.672.) During the investigation into Hicks' complaint, Caesar said, "I do not recall another staff that day that had on an inappropriate short dress because I would have had a discussion with them as well . . . ." (ECF No. 27-24, PageID.417.)

Hicks left her job at MRS on July 12, 2019, and joined the Michigan Department of Natural Resources. (ECF No. 31-2, PageID.805.)

**B.**

Hicks filed her complaint in federal court on September 17, 2019, and an amended complaint on November 13, 2019. She now asserts three claims under Michigan's Elliott-Larsen Civil Rights Act (ELCRA), including retaliation (Count I), disparate treatment (Count II), and hostile work environment (Count III). She also brings a claim under 42 U.S.C. § 1983, alleging that both Brown and Caesar violated her rights under the Equal Protection Clause of the United States Constitution by discriminating against her based on race and sex. (ECF No. 8, PageID.62–66.) She also filed, but then voluntarily dismissed, several Title VII claims against MDHHS. (ECF Nos. 1, 9.)

Following discovery, Caesar alone filed for summary judgment. (ECF No. 8.) The parties' positions are briefed adequately and the motions can be decided without further argument. E.D. Mich. LR 7.1(f).

## II. Standard for Relief

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party may discharge its initial summary judgment burden by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party does so, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must then determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury, or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

## III. 42 U.S.C. § 1983

The Court begins with Hicks' § 1983 claim. Hicks believes that Caesar violated her rights under the Constitution's Equal Protection Clause by discriminating against her on the basis of race and sex.[1] "The Equal Protection Clause prohibits

---

[1] Hicks also brings a claim for retaliation under §1983, but as Caesar points out, the Sixth Circuit has never been recognized such claims under the Equal Protection Clause. *See R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 440 (6th Cir. 2005) (citing *Watkins v. Bowden*, 105 F.3d 1344, 1354 (11th Cir.1997) ("A pure or generic retaliation claim, however, simply does not implicate the Equal Protection

8

discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Rondigo, L.L.C. v Township of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (citations omitted). "In order to establish an equal protection violation against a public employer in a section 1983 action, a plaintiff must show that the employer made an adverse employment decision with a discriminatory intent and purpose." *Toth v. City of Toledo*, 480 F. App'x 827, 832 (6th Cir. 2012) (quoting *Boger v. Wayne Cnty.*, 950 F.2d 316, 324–25 (6th Cir. 1991)).

As in the Title VII context, a plaintiff can prove a § 1983 discrimination claim with direct or circumstantial evidence. *See Weberg v. Franks*, 229 F.3d 514, 522–23 (6th Cir. 2000). As Hicks relies on circumstantial evidence, the Court will apply the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008) ("In weighing an employment discrimination claim asserting disparate treatment under § 1983, this Court applies the familiar *McDonnell Douglas* framework applicable in similar cases brought under Title VII.").

Accordingly, Hicks has an initial burden to establish a prima facie case of race and sex discrimination. *See McDonnell Douglas*, 411 U.S at 802. To do so, she must establish that: "(1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) similarly

---

Clause."). Regardless, Hicks did not address the § 1983 retaliation claim in her response brief, so she has forfeited this claim.

9

situated non-protected employees were treated more favorably." *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016) (sex discrimination); *see also Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013) (race discrimination).

If Hicks successfully establishes a prima facie case of discrimination, the burden shifts to Caesar to produce evidence of a legitimate, nondiscriminatory reason for the adverse employment action. *See Smith*, 378 F.3d at 570. If Caesar meets her burden of production, then Hicks "must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination." *Jackson*, 814 F.3d at 779. But Hicks' "ultimate burden" is to "persuade[ ] the court that she was the victim of intentional discrimination." *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Here, Hicks cannot proceed beyond the first stage. She has not established a prima facie case because she has not identified any "similarly situated non-protected employees [who] were treated more favorably." *See Jackson*, 814 F.3d at 776.

"The Equal Protection Clause is 'essentially a direction that all persons similarly situated should be treated alike.'" *Foster v. Michigan*, 573 F. App'x. 377, 396 (6th Cir. 2014) (quoting *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "[T]o be deemed 'similarly-situated', the [individuals] with [which] the plaintiff seeks to compare [her] treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their

10

conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). Hicks "need not demonstrate an exact correlation," but her comparators "must be similar in 'all of the relevant aspects.'" *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (quotation omitted); s*ee also Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004) (sex discrimination); *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 348 (6th Cir. 2012) (race discrimination).

Hicks points to two coworkers as proposed comparators, but neither come close to being similar "in all of the relevant aspects." *See Jackson*, 814 F.3d at 776.

### A.

As for sex discrimination, Hicks points only to Brown as a comparator. She claims that when Brown complained about her "leaving him without a ride one morning, [she] was issued a written reprimand." (ECF No. 31, PageID.680.) But when she complained about Brown sexually harassing her, "she was issued a corrective action and still had to work with" Brown. (*Id.*) So, says Hicks, "Brown was treated differently and is a male." (*Id.*)

But Brown is situated differently from Hicks in two important respects. First, while Caesar did supervise both Hicks and Brown, she was not responsible for the sexual-harassment investigation. (*See* ECF No. 27-6, PageID.259; ECF No. 27-19, PageID.329–340.) The record is clear that EEOC Officer Bettison conducted the investigation into Hicks' sexual-harassment complaint against Brown. (ECF No. 27-

11

19, PageID.329–340.) So Caesar could not possibly have treated Hicks differently based on her sex during that investigation.

Second, Brown and Hicks did not engage in the same conduct and were therefore not subject to the same standards. Brown accused Hicks of failing to give him a ride to an off-site meeting. This allegation was substantiated after a brief investigation that included two witness interviews. (ECF No. 27-18, PageID.325.) Because of this and an unrelated verbal argument with a different coworker, Hicks was issued a written reprimand and required to complete two online training courses. (*Id.*) In contrast, Hicks accused Brown of sexual harassment. This resulted in a months-long investigation by Bettison where he interviewed witnesses, collected evidence, and completed a full investigation report. (*See* ECF No. 27-19.) Though the investigation did not substantiate Hicks' allegation, Caesar reassigned Brown to a different assistant so he and Hicks would no longer work together directly. (ECF No. 31-2, PageID.766.) In other words, Hicks' more serious allegation was more thoroughly investigated than Brown's relatively minor one. And even though Caesar was not required to do anything following the sexual harassment investigation because the claims were unsubstantiated, she took steps to protect Hicks. In sum, Brown is not a similarly situated individual who was treated differently because of his sex.

## B.

As for race discrimination, Hicks claims that she was reprimanded for wearing a dress that allegedly complied with the dress code, while "a Caucasian employee was

12

wearing an even shorter skirt and was not asked to put on pants or change her outfit." (ECF No. 31, PageID.685.) Hicks argues that there was "no reason" for Caesar to have "singled [her] out" or to tell her to "go home and change other than the fact that [Hicks] is African-American." (*Id.*) While neither the amended complaint nor the response identifies this coworker, Hicks' deposition identifies her as Christie Lazette, a rehabilitation counselor at MRS. (ECF No. 31-2, PageID.804.)

But again, Lazette is not similarly situated. First, while Caesar did supervise both women, there is no evidence that Caesar treated them differently. During the investigation into Hicks' complaint, Caesar said, "I do not recall another staff that day that had on an inappropriate short dress because I would have had a discussion with them as well . . . ." (ECF No. 27-24, PageID.417.) Hicks offers no evidence to contradict Caesar's testimony, i.e., Hicks has not shown that Caesar saw Lazette's dress. And if Caesar did not see Lazette's dress, Caesar could not have held both women to different standards. Second, Hicks was a general office assistant and Lazette was a counselor. And counselors—unlike general office assistants—are not expected to work reception as part of their primary job responsibilities; they only cover reception "as necessary." (ECF No. 31-2, PageID.805.) So even if Caesar had seen Lazette's dress, Hicks has not shown that the women's different positions did not justify different treatment. Finally, it is not clear that they were treated differently at all. Despite Caesar's request that Hicks change her clothes, Hicks did not do so and received no discipline for failing to do so. (ECF No. 31-2, PageID.796.) So in the end, Caesar did not treat Hicks worse than Lazette in any meaningful way.

Because Hicks has failed to point to a similarly situated individual who was treated better because of their race or sex, her § 1983 claim against Caesar fails.

### IV. ELCRA Claims

By statute, federal courts may exercise supplemental jurisdiction over certain state-law claims. *See* 28 U.S.C. § 1367(a). However, courts have the discretion to decline to exercise such jurisdiction when the state-law claims "substantially predominate[ ] over the claim or claims over which the district court has original jurisdiction." *See* 28 U.S.C. § 1367(c)(2). Indeed, "if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *Kubala v. Smith*, 984 F.3d 1132, 1137 (6th Cir. 2021) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966).

Here, the state-law claims against both Caesar and Brown substantially predominate over the federal claim. First, Hicks brought three state-law claims against each defendant, compared to only one federal claim. *See Dietrich v. Simon*, No. 16-2551, 2017 WL 5201919, at *2 (6th Cir. May 17, 2017) ("Because Dietrich's complaint alleged only a single federal claim and five state law claims, the state law claims predominated, and the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over them."). Second, the proof offered for and scope of the issues raised by the state-law claims is much broader than for the single § 1983 claim brought against each defendant. Hicks brings retaliation, disparate

14

treatment, and hostile work environment claims under ELCRA. Each of these claims requires consideration of a vast evidentiary record that was not necessary to determine the § 1983 claim. Even the disparate treatment claim under ELCRA is much broader in scope than the § 1983 claim because it contains a weight discrimination claim unknown to federal law. (ECF No. 8, PageID.63.)

Accordingly, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims as to both defendants. Thus, all state-law claims are DISMISSED without prejudice.

## V. Conclusion

For the reasons given, the Court GRANTS Caesar's motion for summary judgment on the § 1983 equal protection claim. And the Court declines to exercise supplemental jurisdiction over the remaining state-law claims as to Caesar and Brown, so those claims are DISMISSED without prejudice. Thus, the claims against Caesar are dismissed and only the § 1983 claim against Brown survives.

SO ORDERED.

Dated: October 27, 2021

s/Laurie J. Michelson<br>
LAURIE J. MICHELSON<br>
UNITED STATES DISTRICT JUDGE